OPINION
{¶ 1} A.F. appeals from the judgment of the Montgomery County Juvenile Court granting permanent custody of her child, A.B., to the Montgomery County Children's Services Bureau (MCCS). *Page 2 
 {¶ 2} On June 13, 2005, Montgomery County Children's Services (MCCS) filed a complaint alleging that the child in this case, A.B., who was born September 17, 2004, was neglected and dependent. (Docket Entry 1.) On September 30, 2005, the court adjudicated A.B. a dependant and neglected child based on the child's failure to thrive, a severe heart condition, and the parents' failure to have the child appropriately treated. The court granted temporary custody of A.B. to MCCS. On March 30, 2006, MCCS filed a motion for permanent custody of A.B. (Docket Entry 30).
 {¶ 3} On November 8, 2006, after a hearing on the motion for permanent custody, the magistrate recommended that the court grant MCCS permanent custody of A.B. On December 8, 2006 and April 5, 2007, A.F., A.B.'s mother, filed objections to the Magistrate's Decision. On February 8, 2007 and May 3, 2007, MCCS responded. On July 19, 2007, the juvenile court overruled A.F.'s objections and adopted the Magistrate's Decision. This appeal followed.
 {¶ 4} On June 10, 2005, A.B. was removed from his parents' custody because they failed to provide him with adequate medical treatment. A.B. was diagnosed with a serious heart condition — a hole in his heart — and the parents had not followed through with the necessary medical appointments at the time of removal. MCCS placed A.B. in foster care and he underwent heart surgery on August 17, 2005, at Cincinnati Children's Hospital.
 {¶ 5} MCCS developed a case plan to provide A.B.'s parents, A.F. and L.B., with objectives so that reunification would be possible. The objectives of the case plan for A.F. required her to complete parenting classes, engage in mental health counseling, complete a substance abuse assessment, and complete a psychological and parenting *Page 3 
assessment.
 {¶ 6} At the permanent custody hearing it was established that A.F. failed to appear for her scheduled alcohol and drug assessments in 2005. (T. 10-12.) Doctor Reginald Jones, a psychologist, testified he conducted a partial psychological evaluation of A.F. in August, 2005 and determined she functioned in the mildly retarded range. Jones stated he was unable to complete the parenting assessment because A.F. missed appointments. Specifically, he stated he was unable to observe A.F. interact with her child. (T. 17.) Because A.F. did not complete the parenting assessment with Jones, he was unable to make any assessment of her suitability for parenting. He stated he believed A.F. had an atypical personality disorder with some substance abuse overlay, possibly in remission. (T. 18.) Jones states he based his opinion about A.F.'s substance abuse upon her admission to him that she had participated in substance abuse programs on three prior occasions. (T. 30.) Finally, Jones stated that although he did not complete the psychological assessment of A.F., he recommended she receive mental health intervention and substance abuse counseling. (T. 34.) Dr. Jones stated he was unaware that A.F. had another child who was born crack addicted and another with fetal alcohol syndrome. Because of A.F.'s cognition dysfunction, he recommended that she have individualized parenting classes.
 {¶ 7} A.B.'s foster mother, L.J., testified A.B. was thriving in her care. She has four other children but indicated a desire to adopt A.B. (T. 59.) She did testify she was concerned with A.B.'s slowness in speaking and with his gait.
 {¶ 8} Sara Rogers, the MCCS caseworker, testified A.B. will be referred for speech therapy to improve his speech. She said A.B. was very bonded to both foster *Page 4 
parents. Ms. Rogers testified that as part of the case plan for reunification, A.F. was to complete a substance abuse assessment and treatment as well as parenting classes which she failed to do. (T. 74.)
 {¶ 9} The case plan of which Ms. Rogers referred for reunification was begun on August 23, 2005. The agency's particular concern was A.B.'s heart problems, his failure to thrive, his parents' ability to parent him, and his mother's substance abuse problems. The plan called for the parents to receive psychological/parenting assessment and the mother to receive a substance abuse assessment and treatment if necessary. Ms. Rogers testified that in January 2006 she provided A.F. with a variety of places she could choose to go to for parenting classes, but she provided no verification that she had attended any parenting classes. (T. 75.) In March 2006, a second case plan required the parents to receive mental health counseling and to meet with a nutritionist to learn how to correctly feed their son based on his medical needs. Ms. Rogers stated A.F. was receiving individual counseling at United Way. She testified A.F. makes her scheduled visitations with A.B., but she has observed very little interaction between A.B. and his mother. (T. 80, 81.) Ms. Rogers testified A.B.'s biological father took little interest in him after the boy's mother got a new boyfriend. She testified she was unable to place A.B. in A.F.'s mother's home and that there are no other relatives available to care for the boy.
 {¶ 10} The guardian ad litem filed an extensive report with the court. The guardian recommended that MCCS be granted permanent custody of A.B. The guardian stated he interviewed the mother in April 2006 and while she knew of her objectives under the case plan, she still failed to meet them. He noted that the mother *Page 5 
desired to have her child back in her care, but noted she had three prior children removed from her care. He also noted that A.F. tested positive for cocaine on May 10, 2005.
 {¶ 11} A.F. testified that she tried to get a drug and alcohol assessment, but she missed her appointment because she was sick. (T. 112.) She testified she just started counseling and was scheduled to begin parenting classes on August 23, 2006. She testified she visits regularly with A.B. and he is very happy with her. (T. 117.) She testified she can care for A.B. and he has his own room in her apartment. She testified her present boyfriend gets along well with A.B. She testified she does not do drugs (although she tested positive for cocaine on May 10, 2006).
 {¶ 12} A.F.'s boyfriend testified that he visited A.B. with A.F. every week since their relationship began. He testified A.B. relates well with his mother and him. At the conclusion of the testimony, the guardian ad litem, Charles Bursey, stated that A.F. had her case plan objectives explained to her on numerous occasions. He said he told A.F. she needed to contact her caseworker, particularly about the parenting classes. He noted that while A.B.'s heart situation had been alleviated, he remained substantially underweight for his age.
 {¶ 13} In granting permanent custody to MCCS, the magistrate made certain findings of fact. The magistrate found that the agency made reasonable efforts to make it possible for A.B. to return home to his mother. The magistrate found that A.F. has placed the child at substantial risk of harm due to drug/alcohol use and abuse, and she has rejected treatment twice. The magistrate found that both mother and father have failed to demonstrate parenting skills, have failed to remedy the conditions causing the *Page 6 
child to be placed outside the home, and both parents have drug problems severe enough to interfere with the care of the child in the foreseeable future. The magistrate found that the mother failed to complete the case plan's objectives such as completing the psychological and parenting assessment with Dr. Jones. She found the mother failed to get a substance abuse assessment despite two separate referrals and despite having tested positive for cocaine as recently as May 2006. She found the natural father also failed to complete the case plan. Finally, the magistrate found that reunification with the parents was not possible within a reasonable time because neither natural parent has put himself or herself in a position to be able to adequately parent the child. The magistrate also found that there is a reasonable expectation the child will be adopted.
 {¶ 14} Finally, the magistrate made the following conclusion of law:
 {¶ 15} "2. In accordance with § 2151.414(D) of the Ohio Revised Code, there is clear and convincing evidence that granting permanent custody to Montgomery County Children Services is in the child's best interest based upon the following:
 {¶ 16} "1) The interaction and interrelationship of the child with the child's parents and foster caregivers — The caseworker indicated observing a limited amount of interaction between the mother and the child during the mother's parenting time. The child reportedly has a strong bond with the foster family with whom he resides. This is understandable since the child was removed from the mother's care on June 10, 2005 when the child was approximately nine months old and has remained with the current foster family since approximately June 15, 2005. The foster mother indicated that if the child became available for adoption, they wish to pursue adoption; *Page 7 
 {¶ 17} "2) The child is too young to express his wishes;
 {¶ 18} "3) The custodial history supports granting permanent custody to Montgomery County Children Services. The child was removed from the parents in June 2005. The parents have still not made substantial progress on their Case Plan as of August 2006. The mother and father tested positive for cocaine in May 2006 and the father admits that he cannot provide adequate care for the child. The mother has a history of substance abuse issues that have not been resolved; and
 {¶ 19} "4) The child needs a legally secure permanent placement and that type of placement cannot be achieved without granting permanent custody to Montgomery County Children Services. The parents have demonstrated historically that they cannot obtain and maintain an adequate permanent home. The mother has not been able to sustain sobriety. The parents cannot now or in the foreseeable future meet the child's basic needs or provide an adequate permanent home."
 {¶ 20} In a single assignment of error, A.F. argues the trial court's judgment is against the manifest weight of the evidence. She argues the trial court erred in determining that the grant of permanent custody to MCCS was in the best interest of A.B. Specifically, she argues that the court did not consider her testimony and that of her boyfriend that she had formed a close bond with A.B. and loved him. She points out that the caseworker, Sara Rogers, testified she visited regularly with A.B. and to how excited he was to see his mother. She also argues that the magistrate erred in finding she could not provide an adequate permanent home because she offered unrefuted testimony that A.B. had his own room and adequate clothing. Also, appellant argues the magistrate erred in finding that she failed to remedy the conditions which caused the *Page 8 
child to be removed from the home. She notes the child's heart condition has been remedied by surgery. She also notes the magistrate erred in finding that she failed to utilize psychological and other social and rehabilitative services because she and the MCCS worker both testified she completed the psychological assessment, and she was involved in individual counseling. She also notes she was enrolled in parenting classes beginning August 23, 2006.
 {¶ 21} She argues the court erred in finding that she had a substance abuse issue so severe that it makes the parents unable to provide an adequate permanent home for the child because there was no testimony to substantiate why substance abuse was an objective under the case plan. She notes that Dr. Jones did not have any reason for making the recommendation other than her admission that she had tried marijuana once and had been to treatment programs in the past. In any event, she testified she had completed such a program in March 2005. Lastly, she argues that she was making progress on her case plan and should have been allowed a reasonable time to complete her case plan.
 {¶ 22} For its part, the State argues the record supports the trial court's findings that A.F. failed to meet the objectives set out in the case plan, namely, to address her substance abuse problems and her inability to properly parent her child. Additionally, the State argues the record supports the trial court's finding that there are no appropriate relatives to take custody of A.B. and permanent custody in the agency is in the child's best interest. A trial court may place a child in the permanent custody of an agency if it finds by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be *Page 9 
placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(2). See also In re WilliamS. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738.
 {¶ 23} In reviewing the juvenile court's judgment, this Court must determine from the record whether the trial court had sufficient evidence to satisfy the clear and convincing standard. Clear and convincing evidence requires that the proof "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 53 O.O. 361,120 N.E.2d 118, paragraph three of the syllabus. See also In re Adoptionof Holcomb (1987), 18 Ohio St.3d 361, 368, 18 OBR 419, 481 N.E.2d 613.
 {¶ 24} We have held, despite the amendment to R.C. 2151.414(A), that the agency must still make a good faith effort to reunify parent and child. In Matter of Lawson/Reid Children (Apr. 18, 1997), Clark App. No. 96-CA-0010, 1997 WL 189379.
 {¶ 25} In this matter, A.B. was removed from his parents because he was failing to thrive and was in immediate need of medical care for a severe heart condition, and for the parents' failure to have the child appropriately treated. Although A. B. underwent surgery to correct the heart defect, he needed follow-up care which was provided by the foster parents. Although underweight, A.B. gradually improved and began to thrive in the care of his foster parents.
 {¶ 26} We find that the trial court's judgment is supported by the weight of the evidence. A.B. was removed from the appellant's home because of his immediate need for medical attention for his heart problem. He was also moved for his failure to thrive. Indeed, A.B. continues to be underweight for his age and has speech and gait problems. *Page 10 
The agency, for its part, had made a good-faith effort to help A.F. meet her parenting responsibilities for A.B. The appellant, for her part, has failed to meet the case plan objectives despite repeated efforts by her caseworker and the guardian ad litem. She waited until just before the hearing to schedule parenting classes. She never completed the parenting or substance abuse assessments. She denied using drugs, yet in May 2006 she tested positive for cocaine. Dr. Jones was particularly concerned about A.F.'s cognitive dysfunction and the need for A.F. to receive individualized parenting classes in light of A.B.'s failure to thrive. In summary, A.F. failed to substantially remedy the condition that caused A.B. to be removed from her home. In Matter ofStewart (Nov. 8, 1996), Portage App. 96-P-0016, 1996 WL l703406. There is no evidence in the record that A.B. could be placed with a relative of the appellant. There is also evidence that A.B. is adoptable. Thus, the appellant's assignment of error is Overruled. The judgment of the trial court is Affirmed.
DONOVAN, J., and VALEN, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, (sitting by assignment of the Chief Justice of the Supreme Court of Ohio) *Page 1